SIGNED THIS: September 17, 2015

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ADAM S. WOODSIDE and ) | Case No. 14-81416 |
| CRYSTAL K. WOODSIDE, ) | |
| ) | |
| Debtors. ) | |

## O P I N I O N

This matter is before the Court on the issue of whether the federal nonrefundable child tax credit is exemptible under Illinois law as a public assistance benefit. The Court determines that the nonrefundable credit is not exemptible.

The Debtors, Adam and Crystal Woodside, parents of two children, filed a chapter 7 petition on August 11, 2014. In their Amended Schedule C, listing property claimed as exempt, they claimed an exemption valued at $2,000 in a "Public Assistance Benefit" under an Illinois statute, arising from a nonrefundable child tax credit used on their 2014 joint federal income tax return. For tax year 2014, the Debtors received a federal refund of $4,976 and a state refund of $423. Since the Debtors filed their petition in August, 2014, the parties agree

that only a ratable portion of the refunds, based on the filing date, is property of the estate, the sum of $3,298.57. The Debtors seek to use the public assistance benefit exemption to remove from the estate a $2,000 portion of the $3,298.57 that the Debtors otherwise agree is property of the estate.

The Trustee relies upon this Court's decision in *In re Koch,* 299 B.R. 523 (Bankr.C.D.Ill. 2003), *Hardy v. Fink (In re Hardy),* 787 F.3d 1189 (8th Cir. 2015), and *In re Zingale,* 451 B.R. 412 (6th Cir.BAP 2011), *aff'd,* 693 F.3d 704 (6th Cir. 2012). The Debtors rely upon *In re Vazquez,* 516 B.R. 523 (Bankr.N.D.Ill. 2014). The issues are whether the Illinois exemption for the right to receive a public assistance benefit is limited to governmental benefits provided to needy or lower income recipients, and whether the nonrefundable Child Tax Credit is property of the estate subject to exemption.

**ANALYSIS**

Enacted in 1982, the exemption at issue is found in the Illinois statute[1] that makes certain personal property, owned by the debtor, exempt from judgment, attachment or distress for rent, including *inter alia,* the "debtor's right to receive a . . . public assistance benefit." 735 IlCS 5/12-1001(g)(1). Most states have a similar statute exempting public assistance benefits.

The Illinois Supreme Court has noted that the comprehensive reorganization and expansion of the Illinois personal property exemptions that became effective July 1, 1982, occurred in response to the relatively generous federal exemptions implemented as part of the Bankruptcy Code under the Bankruptcy Reform Act of 1978. *In re Marriage of Logston,* 103

---

[1]The State of Illinois has opted out of the federal bankruptcy exemption scheme, so Illinois debtors in bankruptcy cases must use the exemptions provided by Illinois law rather than the federal bankruptcy exemptions found in 11 U.S.C. § 522(d).

2

Ill.2d 266, 281-82, 469 N.E.2d 167 (1984). The Illinois personal property exemption statute is remarkably similar in many respects to the federal exemptions set forth in section 522(d) of the Bankruptcy Code. In particular, the first four paragraphs of subsection (g) of the Illinois statute are, with one exception, identical to the corresponding provision in the Bankruptcy Code.[2] *Cf.* 735 ILCS 5/12-1001(g) with 11 U.S.C. § 522(d)(10). Unfortunately, the 1982 amendments to the Illinois law are not addressed in the record of the Illinois House or Senate. *Logston,* 103 Ill.2d at 282.

The revised federal exemptions enacted as part of the Bankruptcy Code are derived from the Uniform Exemptions Act, promulgated by the Commissioners of Uniform State Laws in August, 1976. The federal legislative history states that § 522(d)(10) "exempts certain benefits that are akin to future earnings of the debtor." House Report No. 95-595, 95th Cong., 1st Sess. 361-62 (1977). As the Illinois exemption for a debtor's right to receive a public assistance benefit derives, at least arguably, from the same provision in the Uniform Exemptions Act, it is appropriate to consider how courts have construed that provision as enacted by other states and as used in the Bankruptcy Code. Consulting decisions from other jurisdictions is especially appropriate when a uniform law is at issue. *In re Pillowtex, Inc.,* 349 F.3d 711, 718 n.8 (3d Cir. 2003); *Lake Motor Freight, Inc. v. Randy Trucking, Inc.,* 118 Ill.App.3d 626, 631 (Ill.App. 1 Dist. 1983).

---

[2]The exception is that debtors using the federal exemption may exempt a right to receive only a "*local* public assistance benefit," while Illinois debtors may exempt a right to receive any "public assistance benefit." This difference has led to the incongruous result that debtors using the federal exemptions are not entitled to exempt the right to receive the refundable earned income or additional child tax credits because they are federal, not local, benefits. *See In re Lee,* 415 B.R. 518, 525 (Bankr.D.Kan. 2009). As no written explanation for the change exists, the Legislature's decision to delete the word "local" seems destined to remain one of the great mysteries of Illinois legislative history. A clue, however, is that the Commissioners of Uniform State Laws issued an amended Uniform Exemption Act in 1979 that changed "local public assistance benefit" to "federal, state, or local public assistance legislation." So perhaps it is the Bankruptcy Code version that is behind the times.

The Child Tax Credit (CTC) was added to the Internal Revenue Code in 1997 at 26 U.S.C. § 24, allowing parents under a certain income threshold to claim a nonrefundable credit of $500 per qualifying child. The statute also provided a formula under which a family with three or more children could receive a partial refund of the credit, the Additional Child Tax Credit (ACTC). The statute has been amended several times, *see Hardy,* 787 F.3d at 1193-1196, so the ACTC is now available to all families with qualifying children, not just those with three or more children, and the amount of the credit has been increased to $1,000 per qualifying child. The statute, in its current form, maintains the two different components to the credit. The CTC may be used only to offset a taxpayer's tax liability. Under certain circumstances, a taxpayer is entitled to claim an ACTC, which is calculated based on the amount of the CTC not used to offset tax liability.[3] The ACTC is sent to the taxpayer as an income tax refund, as the refundable portion is treated as an overpayment under the tax code. 26 U.S.C. § 24(d)(1).

**The Property of the Estate Issue.**

Since an exemption in a bankruptcy case may only be allowed with respect to property of the estate, a number of courts have considered whether the CTC and/or the ACTC are property of the estate, with the majority concluding that only the refundable portion of the credit, the ACTC, is property of the estate. *See In re Luke,* 2009 WL 1617468 (Bankr.N.D.Ohio 2009) (collecting cases). In line with that reasoning, it is difficult to see how a nonrefundable credit could be considered to be "property." Although the nonrefundable CTC may facilitate a refund where prior tax payments exceed the tax liability net of the credit, it is the taxpayer's

---

[3]If a taxpayer's child tax credit is greater than his tax liability (regular and AMT), the taxpayer may be eligible for a refundable credit, currently limited to 15% of the excess of taxpayer's earned income over $3,000. 8 Mertens Law of Fed. Income Tax'n § 32:34 (2015). The CTC and ACTC refer to the same credit of $1,000 per qualifying child, with the ACTC designating the refundable portion of the credit.

4

own payments that are being refunded. The credit is not giving the taxpayer anything more than was paid in. Thus the benefit of a nonrefundable credit is solely formulaic. It is not itself an asset that can be garnished and liquidated by a creditor or distributed by a trustee. *Id.* It is the tax refund (and the taxpayer's entitlement thereto) that is property subject to garnishment, execution or attachment (or interception by the IRS) and that, therefore, is potentially exemptible. *See Sorenson v. Secretary of Treasury,* 475 U.S. 851 (1986)(tax refunds attributable to earned income credits were subject to interception by the IRS due to the refundability of the credits). The various nonrefundable credits and deductions available to taxpayers in the Internal Revenue Code, which provide a financial benefit in the form of reduced tax liability, are not "property" that is either garnishable or exemptible. *See Randall v. Loftsgaarden,* 478 U.S. 647, 656-57, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986)(tax deductions and credits which offset income or tax liability have no value in themselves and are not "income" under the tax code); *City of Chicago v. Michigan Beach Housing Co-op.,* 242 Ill.App.3d 636, 646-48, 609 N.E.2d 877 (Ill.App. 1 Dist. 1993)(tax credits that do not constitute a right to payment of money, are not transferrable, and have no independent value, cannot serve as collateral because they are not general intangible personal property under Article 9 of the UCC); *Rainbow Apartments v. Illinois Property Tax Appeal Bd.,* 326 Ill.App.3d 1105, 1108, 762 N.E.2d 534 (Ill.App. 4 Dist. 2001) (same).

Refundable credits are a different story. The ACTC's refundable nature means that a taxpayer has a statutory right to receive a refund that exceeds his tax payments if certain conditions are met, including that the CTC is not fully used up to offset tax liability. The fact

that the taxpayer's entitlement to the refund is contingent does not matter, as contingent payment rights are nonetheless property of the estate. *Matter of Yonikus,* 996 F.2d 866, 869 (7th Cir. 1993). The clear majority rule is that debtors have a contingent interest in the ACTC refund for the tax year during which the bankruptcy petition was filed and that the prepetition portion of the refund is property of the estate. *In re Atwood,* 2014 WL 2860992 (Bankr.S.D.Ind. 2014) (collecting cases).

A debtor's right to receive a refundable ACTC is correctly treated as a property interest that becomes property of the estate by operation of section 541 and that is subject to exemption under section 522. This follows from the fact that the tax code provision creates an entitlement (albeit contingent) to receive funds from the U.S. Treasury. The fact that the ACTC amount is deemed to be an "overpayment," thereby enabling the payment to be made as a tax refund, is incidental. To the contrary, the nonrefundable CTC is a credit usable only to offset a taxpayer's liability. The entitlement to a payment is the aspect of the ACTC that makes it a property interest, whereas the lack of such entitlement is what means the CTC is not an interest in property and does not become property of the estate upon the bankruptcy filing. *See Zingale,* 451 B.R. at 421, *aff'd on other grounds,* 693 F.3d 704 (6th Cir. 2012) (holding that because the offset-only portion of the CTC was not refunded to the debtors, it was not, therefore, property of the estate that could be exempted).

This Court holds that the nonrefundable CTC is not property of the estate and thus is not properly subject to a claim of exemption. Even if it could be considered property of the estate, as discussed below, it is not a "public assistance benefit" within the meaning of the Illinois exemption laws.

6

**The Meaning of "Public Assistance."**

In *Koch,* this Court held that the nonrefundable CTC could not be exempted as a "public assistance benefit" under the Illinois exemption laws, but that the refundable ACTC, designed to benefit taxpayers with limited financial means, could be claimed as exempt. This Court applied the three-part test used in *In re Crampton,* 249 B.R. 215 (Bankr.D.Idaho 2000), focusing on (1) the purpose and policy of the tax credit; (2) whether the credit is refundable; and (3) the income levels at which the credit is phased down or eliminated.

The Debtors are effectively asking the Court to reconsider the holding in *Koch* that the nonrefundable CTC cannot be exempted as a public assistance benefit. They contend that even though the income phase-out level for the CTC is much higher than for the ACTC, the Court should not set arbitrary limits on what is meant by "public assistance" based upon the recipient's income level. The Debtors rely on *Vazquez* for the proposition that courts "should not assume that exemptions, or any other form of public assistance, should benefit lower income individuals only." 516 B.R. at 527. The meaning of the term "public assistance," not defined in the Illinois statute or in any Illinois court opinion, is a question of Illinois law. As a federal court applying Illinois law, this Court must attempt to predict how the Illinois Supreme Court would decide the issue. *Allen v. Transamerica Ins. Co.,* 128 F.3d 462, 466 (7th Cir. 1997).

In *In re Fish,* 224 B.R. 82 (Bankr.S.D.Ill. 1998), Judge Kenneth Meyers considered whether another federal tax code credit, the Earned Income Credit, could be exempted under the Illinois law allowing an exemption for the right to receive a "public assistance benefit," the

7

same provision at issue before this Court. Judge Meyers rejected the trustee's argument that "public assistance" should be given the identical meaning as "public aid" under Illinois law, which would have limited the scope of the exemption to benefits provided only by the Illinois Public Aid Code. However, Judge Meyers went on to determine that the earned income credit is a "public assistance benefit," based on reasoning that the credit was intended to provide relief for low income families hurt by rising food and energy prices, citing *Sorenson, supra*. *In re Fish,* 224 B.R. at 84. This Court agrees with Judge Meyers that the term "public assistance," both as a matter of general usage and as used by the Illinois Legislature, contemplates financial aid to lower income individuals and families.

This conclusion is bolstered by the legislature's repeated use of the term "public assistance" throughout the Illinois Public Aid Code, 305 ILCS 5/1-1 *et. seq.*, the primary purpose of which is to assist in the alleviation and prevention of poverty. *Lawrie v. Dept. of Public Aid,* 72 Ill.2d 335, 348, 381 N.E.2d 226 (1978). For example, Public Aid Code Article VIIIA, which proscribes and provides remedies for recipient fraud, vendor fraud and kickbacks, and administrative malfeasance, is entitled "Public Assistance Fraud." The Illinois Public Aid Code became effective in 1967 while the exemption statute at issue was enacted in 1982, so the term public assistance had a statutory usage synonymous with public aid for more than a decade when the legislature was considering wholesale revisions to the personal property exemption statute. In addition, under Illinois law, the Public Aid Code is the primary source of the various forms of financial aid of the type that lawmakers are concerned with exempting from creditors. It is reasonable to accord an interpretation to the term "public

assistance" as used in the exemption statute, that is consistent with the usage of the same term found in the Public Aid Code which, to reiterate, means financial or other aid given to needy or lower income individuals and families. As a matter of general usage as well, the terms "public aid" and its synonym "public assistance" are most accurately defined as government payments or other benefits provided to the needy. *In re Hardy,* 787 F.3d 1189, 1193 (8th Cir. 2015).

In addition, the statutory context supports the same result. Subsection (h) of the Illinois exemption statute, covering certain reparation awards, tort damages, and life insurance benefits, exempts not only the debtor's right to receive those payments, but also "property that is traceable to" the payments. 735 ILCS 5/12-1001(h). Subsection (g) exempts a debtor's right to receive various payments, including a public assistance benefit, but does not further exempt property traceable to the benefits. So the exemption provided under subsection (g) does not extend to payments once received or property traceable thereto. *Fayette County Hosp. v. Reavis,* 169 Ill.App.3d 246, 249-50, 523 N.E.2d 693 (Ill.App. 5 Dist. 1988). This distinction indicates that the lawmakers intentionally limited the scope of the exemption under subsection (g), in public assistance and other income replacement benefits, to funds paid periodically and necessary for the current support of those in need of such support, with no protection to funds accumulated and unspent.

The Court respectfully disagrees with *In re Vazquez,* where the court overruled an objection by the trustee and allowed an exemption in $3,000 of a federal income tax refund claimed on the basis of the nonrefundable CTC, as a public assistance benefit under 735 ILCS 5/12-1001(g)(1). Disregarding the dictionary definition of "public assistance" as government

aid to needy, aged or disabled persons and to dependent children, the *Vazquez* court reasoned that higher income citizens receive a variety of government subsidies such as loans, loan guarantees, tax deductions and grants, all of which could be characterized as public assistance, in a general sense. The court further reasoned that the phase-out provisions of the CTC are the means test lines drawn by Congress and that courts should not redraw those lines.

The meaning of "public assistance" as a question of what the Illinois Legislature intended is the salient inquiry. The *Vazquez* court did not analyze Judge Meyer's opinion in *In re Fish* or consider the established usage of "public assistance" in the Public Aid Code or its context in the personal property exemption statute, factors that are indicative of a legislative intent to limit the exemption for the right to receive public assistance benefits to financial assistance targeted toward those for whom those benefits provide needed support, which the CTC is *not,* given its relatively high phase-out threshold and lack of refundability.

To the extent the Debtors propose that the Illinois exemption for public assistance benefits could include any governmental payment or tax credit, this Court disagrees. In Illinois, the purpose behind statutory exemptions "is to secure to the judgment debtor and his family the necessary shelter and personal property required for their welfare in times of difficult economic circumstances." *State Bank of Antioch v. Nelson,* 132 Ill.App.3d 120, 122-23, 477 N.E.2d 77 (Ill.App. 2 Dist. 1985). Exemptions are intended to provide the means of support for a debtor and his family and to prevent them from becoming "public charges." *Auto Owners Ins. v. Berkshire,* 225 Ill.App.3d 695 (Ill.App. 2 Dist. 1992). Federal tax policy is often driven by special interest concerns that have nothing to do with fulfilling basic needs. Surely tax credits

available to a taxpayer who purchases an electric car or who installs solar panels on the roof of his home are not public assistance benefits under the Illinois exemption statute. So line-drawing is inevitable. A judge does not engage in judicial legislation, as the Debtors suggest, by construing the scope of a statutory exemption to have limits, based upon the apparent purpose of the legislation, even though those limits are not explicit in the statute.

The Debtors also contend that the refundability distinction between the CTC and the ACTC is not significant, arguing that the net financial benefit to the taxpayer is the same, whether the credit results in a positive refund or merely a reduction in tax liability. They argue that the Taxpayer Relief Act of 1997, which created the CTC, was intended to provide relief to overburdened taxpayers so that the entire credit, refundable and nonrefundable portions alike, falls within the scope of a "public assistance benefit" under Illinois law. This argument ignores the high income phase-out levels for the CTC and the evidence that the Illinois Legislature intended the exemption to cover benefits provided by the Illinois Public Aid Code and similarly targeted benefits, as Judge Meyers held in *In re Fish.* It is also contrary to the plethora of case law that emphasize refundability as a critical factor. *See, e.g., In re Dever,* 250 B.R. 701 (Bankr.D.Idaho 2000).

This argument begs the real question, which is whether the general CTC, or only the ACTC, has the attributes of a public assistance benefit. Every deduction and credit available in the Internal Revenue Code, by definition, provides a financial benefit to taxpayers eligible to claim such deductions and credits. But every deduction and credit does not amount to public assistance. Refundability is the key distinction. A purpose to benefit needy or lower

income families is what distinguishes government benefits that can legitimately be classified as public assistance from those benefits that cannot be so classified. Moreover, the term *public assistance* implies the use of government funds or resources. Since the nonrefundable CTC facilitates a refund only of funds the taxpayer previously paid in, while the refundable ACTC pays out general revenues, only the ACTC may properly be characterized as *public* assistance.

This Court agrees with *Vazquez* that, where possible, courts engaging in statutory interpretation involving line-drawing should take their lead from the legislators. Congress drew a clear line of demarcation when it made only a portion of the CTC refundable, in order to put cash into the pockets of the truly needy, while retaining the "offset-only" aspect of the nonrefundable portion of the credit, which is available to those with significantly higher income. In this Court's view, using refundability as the natural dividing line best comports with the meaning of "public assistance benefit" as intended to assist those in need. While a line is being drawn, it is not arbitrary, but is one already drawn by Congress, that being the formulaic standard for refundability.

Finally, this matter is not appropriate for application of the maxim that ambiguities in a remedial exemption statute are to be resolved in favor of the debtor, which is best viewed as a rule of last resort. The Court's ruling is based upon the determination that the nonrefundable CTC is not within the meaning of "public assistance benefit" as a matter of the discerned intent of the Illinois Legislature, and this Court is predicting that the Illinois Supreme Court will agree.[4]

---

[4]The uncertainty of meaning of the term "public assistance benefit" falls into the category of a surface or superficial ambiguity. *See S. Bloom, Inc. v. Korshak,* 52 Ill.2d 56, 65, 284 N.E.2d 257 (1972). The meaning is clarified by reference to the statute's context and purpose, and to the policy behind exemption laws. *See Robinson v. Shell Oil Co.,* 519 U.S.

The Trustee's objection to the Debtors' claim of exemption in a $2,000 portion of their federal income tax refund will be allowed and the exemption will be denied for two alternative reasons, that the nonrefundable CTC is not property of the estate and that it is outside the scope of "public assistance benefit" under the Illinois exemption laws. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

337, 341, 117 S.Ct. 843 (1997); *Dahlstrom v. Sun-Times Media, LLC,* 777 F.3d 937, 943 (7th Cir. 2015).